**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-20642-KMM

ADRIAN BONCULESCU,

    Petitioner,

NAHUN ALEXANDER RODRIGUEZ
RODRIGUEZ,

    Consolidated Petitioner,

v.

MIAMI ICE FIELD OFFICE DIRECTOR, *et al.*,

    Respondents.

                                        /

## <u>ORDER</u>

THIS CAUSE came before the Court upon the Petitions for Writ of Habeas Corpus (the "Petitions") filed by Petitioner Adrian Bonculescu ("Bonculescu") (ECF No. 1) and Nahun Alexander Rodriguez Rodriguez ("Rodriguez") (ECF No. 8). The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to file one consolidated memorandum of fact and law to show cause why Bonculescu's Petition should not be granted. *See generally* (ECF No. 4). The Court then consolidated Bonculescu's case with Rodriguez's upon a finding of common questions of law or fact pursuant to Federal Rule of Civil Procedure 42(a) and ordered Respondents to file one consolidated response addressing both Petitioners. *See* (ECF No. 6). Respondents thereafter filed a Response to Order to Show Cause (the "Response" or "Resp.") (ECF No. 7), and Rodriguez filed a Reply thereto (the "Reply") (ECF No. 9). Bonculescu did not file a reply, and the time to do so has passed. The Petitions are now ripe for review. As set forth below, the Petitions are each GRANTED IN PART as to Petitioners' entitlement to a bond hearing. The Court makes no

determination as to whether Petitioners are in fact entitled to be released following such a hearing.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Court briefly reviews the factual background as to each Petition.

**A. Petitioner Bonculescu**

Bonculescu alleges that he has resided in the United States since entering the country on or around March 14, 2021.  (ECF No. 1) ¶¶ 1–2, 12, 25; Resp. at 2.  A native of Romania, he arrived near Otay Mesa, California and was encountered by Respondent Department of Homeland Security ("DHS"), named through its Secretary Kristi Noem in her official capacity, which issued Bonculescu a Form I-220A, Order of Release on Recognizance after he was detained and placed in removal proceedings pursuant to 8 U.S.C. § 1229a.  (ECF No. 1) ¶¶ 1, 28; (ECF Nos. 1-2, 1-8); Resp. at 2.  Bonculescu is charged as an alien present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i), and timely filed an asylum application with U.S. Citizenship and Immigration Services, which remains pending, based on the Convention Against Torture.  (ECF No. 1) ¶ 3; (ECF Nos. 1-4, 1-10); Resp. at 2–3.

Bonculescu was shortly thereafter arrested for Domestic Abuse Assault Causes Bodily Injury or Mental Illness pursuant to Iowa Code § 708.2A(2)(b), in connection with which he pled guilty to the lesser offense of Disorderly Conduct and was convicted of the same on August 4, 2021.  Resp. at 3–4; (ECF No. 1-9).  He was not detained by DHS until November 29, 2025, however, following a traffic stop.  Resp. at 4; (ECF No. 1-1).  He now remains detained without a bond hearing in Respondents' custody at the Krome North Service Processing Center, which is located at 18201 SW 12th Street, Miami, Florida.  (ECF No. 1) ¶¶ 5–6, 8, 31; Resp. at 4.  He sought a bond redetermination hearing on January 21, 2026 before an Immigration Judge, which was denied based on the determination that he is mandatorily detained pursuant to 8 U.S.C. §

1225(b)(2)(A) rather than 8 U.S.C. § 1226(a), which provides for a bond hearing.  (ECF No. 1) ¶¶ 6, 30; Resp. at 4.  Bonculescu alleges that this is an improper categorization as to him, as he had already entered the United States at the time of detention.  (ECF No. 1) ¶¶ 6–7.  He further asserts that he has demonstrated he is neither a danger to the community nor a flight risk.  *Id.* ¶ 26.

Bonculescu asserts three Counts based on Respondents' application of § 1225(b)(2) to his detention:  (1) violation of substantive due process; (2) violation of procedural due process; and (3) violation of the INA as to § 1226(a).  (ECF No. 1) ¶¶ 54–60.  Thus, Bonculescu asks the Court to:  (1) assume jurisdiction over this matter; (2) order that he shall not be transferred outside the Southern District of Florida while his Petition is pending; (3) declare that Respondents have violated the Due Process Clause of the Fifth Amendment and/or the INA; (4) order Respondents to provide him with an adequate bond hearing pursuant to 8 U.S.C. § 1226(a); (5) in the alternative, order his immediate release from custody if a bond hearing is not held within fourteen (14) days of this Order; and (6) award him reasonable fees under the Equal Access to Justice Act.  (ECF No. 1) at 17–18.

### B.  Petitioner Rodriguez

Rodriguez alleges that he has resided in the United States since entering the country as an unaccompanied alien child ("UAC") on or about November 24, 2017.  (ECF No. 8) ¶¶ 42, 44, 47; Resp. at 3 n.3.  A native of Honduras, he was inspected by DHS which issued a Warrant for Arrest and a Notice of Custody Determination indicating that he was detained pursuant to Section 236 of the Immigration and Nationality Act (the "INA"), which is codified at 8 U.S.C. § 1226.  (ECF No. 8) ¶ 42.  On that day, DHS also issued a Notice to Appear charging Rodriguez with inadmissibility under INA § 212(a)(6)(A)(i) as an alien present in the United States without admission or parole, which would subject him to removal proceedings pursuant to 8 U.S.C. § 1229(a).  (ECF No. 8) ¶

43; (ECF No. 8-5).  After Rodriguez was identified as a UAC, he was transferred into the custody of U.S. Health and Human Services Office of Refugee Resettlement and then released to his mother's custody on December 18, 2017.  (ECF No. 8) ¶¶ 44–45; Resp. at 3; (ECF No. 8-6).  Although the Notice to Appear was issued, Rodriguez was not in fact placed in removal proceedings at the time because that Notice was not filed with the Immigration Court.  Resp. at 3; (ECF No. 8-5).

Rodriguez was convicted on October 1, 2025 of Trespass Structure, Conveyance and Resisting/Obstruct Officer without Violence under Florida law, and upon his release DHS took him into custody and placed him in removal proceedings pursuant to 8 U.S.C. § 1229(a).  Resp. at 4; (ECF Nos. 7-2, 7-3).  Rodriguez was charged as an alien present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A), and as an applicant for admission without valid entry documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Resp. at 4; (ECF No. 7-3).  He is detained at the Miami Federal Detention Center without a bond hearing, and his request for a redetermination before an Immigration Judge was denied based on the determination that he is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A) rather than 8 U.S.C. § 1226(a), which provides for a bond hearing.  (ECF No. 8) ¶¶ 48–49.  He asserts this is an improper classification as to him because he had already been present in the country when he was detained.  *Id.* ¶ 52. Rodriguez further asserts that he has a valid employment authorization document issued by DHS, and that he is not a flight risk or a danger to the community.  *Id.* ¶ 47.

Rodriguez asserts two Counts based on Respondents' application of § 1225(b)(2) to his detention:  (1) violation of the INA; and (2) violation of due process.  *See* (ECF No. 8) ¶¶ 51–57. Thus, Rodriguez asks the Court to:  (1) assume jurisdiction over this matter; (2) order that he not be transferred outside the Southern District of Florida while his Petition is pending; (3) order

4

Respondents to show cause why his Petition should not be granted within three days; (4) issue a writ of habeas corpus directing Respondents to release Rodriguez or, in the alternative, provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a); (5) declare his detention unlawful; and (6) award him fees and costs under the Equal Access to Justice Act. *See id.* at 12–13.

### C.  Procedural History

In the OTSC, the Court assumed jurisdiction over Bonculescu's Petition, ordered that he was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to file one consolidated memorandum of law and fact to show cause why Bonculescu's Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after the Response and Reply had been reviewed. *See* (ECF No. 4) at 4–5.  In its Paperless Order Consolidating Cases, the Court ordered that all provisions of the OTSC except for the time to respond remained in force as to Petitioner Rodriguez upon consolidation. *See* (ECF No. 6).  The Response and Rodriguez's Reply have since been filed. *See* (ECF Nos. 7, 9).  Respondents argue that Petitioners are properly detained pursuant to 8 U.S.C. § 1225(b)(2) as applicants for admission and that § 1226(a) is inapplicable, that Petitioners failed to exhaust their administrative remedies, and that the Court is without jurisdiction to review Petitioners' claims under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See generally* Resp.

Rodriguez argues in opposition that he is properly detained pursuant to § 1226 and therefore is entitled to be heard on bond, as evidenced by his Notice to Appear, that this Court has jurisdiction because his claims do not fall within the ambit of 8 U.S.C. §§ 1252(g) and 1252(b)(9), and that exhaustion is excused. *See generally* Reply.

### II.    LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a

petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district:  the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.     DISCUSSION

### a.   The Policy

The new policy that Petitioner alleges resulted in his improper classification, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by DHS in coordination with the DOJ and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival.  INA § 235(a)(1)." *ICE Memo:  Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the

circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country.

The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases). Nevertheless, a distinct split has emerged since. *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294

(S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both recently held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

### b. Administrative Exhaustion

As an initial matter, the Court agrees with Petitioners that administrative exhaustion would be futile. Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA. *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3

8

(S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A). Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c. Statutory Framework

Turning then to the merits of the Petitions, both Petitioners allege that they were not "arriving" within the meaning of the statute and therefore are properly subject to detention under § 1226(a) rather than § 1225(b). (ECF No. 1) ¶¶ 36–37; (ECF No. 8) ¶¶ 29, 40. Respondents argue that Petitioners are "applicants for admission" within the meaning of § 1225 and therefore may only be released on parole under 8 U.S.C. § 1182(d)(5), and that the claims are otherwise barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See generally* Resp. As an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3.

The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 2026 WL 1243395, at *1. In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at *5–20. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1).  Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim.  *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions.  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal.  8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined.  *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A).  Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending

the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General:  (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization.  *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework."  *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269.  The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[1]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Such a finding would require a reading that all "applicants for admission," which is any alien present

---

[1] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA.  The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 2026 WL 1243395, at *8 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 2026 WL 1243395, at *21.

### d. Petitioners' Detention

Because federal courts are "courts of limited jurisdiction" vested with a *sua sponte* obligation to ensure their own jurisdiction over any matter, the Court starts first with Respondents'

arguments that the Court may not review Petitioners' claims under 8 U.S.C. § 1252(g) and § 1252(b)(9). Resp. at 13–18; *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). According to Respondents, taking § 1252(g) and § 1252(b)(9) together, Petitioners' detention "clearly 'arises from' the decision to commence removal proceedings against an alien" such that this Court lacks jurisdiction to consider the issue of detention without bond. Resp. at 13–14 (quoting *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)).

The Court finds that its previous determination that it has jurisdiction over this matter is not disturbed by either of these provisions. Section 1252(g) is a "narrow" provision only encompassing the decision to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Detention is not one of these enumerated decisions, and therefore challenges to the same are not barred by this statute. *See Merino v. Ripa*, No. 25-cv-23845, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025)

13

(collecting cases).   As to § 1252(b)(9), the Supreme Court has rejected an "expansive interpretation" of that statute that would deprive a court of jurisdiction to review detention without a bond hearing.  *Jennings*, 583 U.S. at 293.  Accordingly, the Court is satisfied that it properly has jurisdiction to entertain the instant Petitions.

Applying the foregoing statutory framework, then, Petitioners are properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1), but are not "seeking admission" within the meaning of § 1225(b)(2)(A).  For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioners were somehow attempting to secure admission into the country when Bonculescu was detained following his traffic stop or Rodriguez following his conviction.  Further, that statute requires that an "examining immigration officer" determine that an alien be one "seeking admission" to invoke mandatory detention pending a § 1229a proceeding, and there is no indication in the materials provided by Respondents that such determination occurred when Petitioners were detained in 2025.  *See id.* § 1225(b)(2)(A); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).  This is further underscored by the fact that both Petitioners' Notice to Appear indicates that they were not detained as an arriving alien but rather as an alien present in the country without inspection by an immigration officer.  *See* (ECF No. 1-1) at 2; (ECF No. 7-3) at 1.

Briefly reviewing Respondents' arguments to the contrary, they first argue that Petitioners are subject to detention as an applicant for admission under 8 U.S.C. § 1225(b)(2)(A) as clarified in *Matter of Yajure Hurtado*.  Resp. at 5–10.  For the reasons discussed above, that Petitioners are an applicant for admission still does not bring them within the ambit of § 1225(b)(2)(A) because

14

they were not seeking admission at the time that they were detained.[2] *See Hernandez Alvarez*, 2026 WL 1243395, at *21 (rejecting the government's argument that petitioners were seeking admission because they did not voluntarily self-deport following their arrest and initiation of removal proceedings). Respondents further assert that § 1226(a) has no impact and that applicants for admission may only be released from detention under 8 U.S.C. § 1182(d)(5) parole, which are both unavailing arguments based on the foregoing determination that § 1226(a) properly governs. Resp. at 10–12.

For the reasons set forth above, the Court finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and therefore that Petitioners are detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. Accordingly, Petitioners are entitled to an individualized bond hearing as a detainee under § 1226(a).

### e. Due Process Violation

The Court will not reach the merits of Petitioners' due process claims because the relief requested in the other Counts is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondents fail to provide Petitioners with a bond hearing as ordered herein, Petitioners may renew each of their due process claims.

### IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Petitions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Bonculescu's Petition (ECF No. 1) and Rodriguez's Petition (ECF No. 8) are each GRANTED IN PART. Counts I and II of Bonculescu's Petition (ECF No. 1) and Count II

---

[2] Further, the Court "need not defer to the BIA's interpretation of law simply because the statute is ambiguous." *See Puga*, 2025 WL 2938369, at *5 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)).

of Rodriguez's Petition (ECF No. 8) are DISMISSED WITHOUT PREJUDICE.  The Court will not award fees and costs under the Equal Access to Justice Act at this time upon a finding that Respondents' asserted position was substantially justified under the circumstances.  *See* 28 U.S.C. § 2412(d)(1)(A).  Within seven (7) days of this Order, Respondents shall provide Petitioners with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioners.  Such bond may not be denied on the basis that Petitioners are detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this __8th__ day of May, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

16